STATE OF MISSOURI  )
                   )  SS:     AFFIDAVIT
COUNTY OF JACKON  )


I, Raymond ("Bud") Miley, being first duly sworn upon oath, depose and say:

1.      I am more than 18 years old and have personal knowledge of the statements made herein.

2.      I am the Plaintiff in the case of Raymond H. Miley, Jr. v. American Shaman Franchise, et al., Case No. 4:210cv-00838-BCW in the United States District Court for the Western District of Missouri.

3.      I was an employee of Defendant American Shaman Franchise Systems LLC ("ASFS"), formerly American Shaman Franchise Systems, Inc., and Shaman Botanicals, LLC ("SB") (formerly Shaman Botanicals, Inc.) (jointly, "Shaman"), from April 1, 2018, through December 2019, pursuant to a written Employment Agreement dated April 1, 2018 (Ex. A), under which I was president of ASFS, reporting directly to the company's owner and CEO, Vincent ("Vince") Sanders.

4.      My role as president of ASFS was to provide strategic leadership by working with management to establish long-range goals, strategies, plans, and policies, and to build a cadre of franchisees who would enter into franchise agreements with Shaman to market and sell Shaman's products.

5.      Pursuant to my Employment Agreement with Shaman, Shaman was required to pay me 6% of Registered Franchise Owners' gross sales, not to exceed $350,000 per year, paid monthly on the tenth day of the following month (Id. ¶ 3), and was further required to reimburse me for all out-of-pocket expenses I incurred (Id. ¶ 4).

6.      As president of Shaman, I developed the company's infrastructure from its inception, including hiring all the executive, sales, and administrative employees, and the Controller and Human Resources Manager.

7.      In November 2019, a former independent vendor of Shaman informed me that Shaman was interviewing people to replace me.  (Ex. B.)

8.    I promptly relayed this information to Vince Sanders, who denied that there was any talk or consideration of terminating my employment or replacing me.

9.    In a late-November 2019 meeting I attended with Defendant Sanders, and Shaman's attorneys Shawn Pickett and Nicholas Porto, Mr. Pickett told me that Shaman was terminating my employment as a W-2 employee, but retaining me as president of International Sales as an "independent contractor", with a monthly salary of "the greater of a commission equal to ten percent (10%) of completed sales… or… $20,000.00" (Ex. C, Outside Sales Agreement).

10.    While trying to finalize and execute the Outside Sales Agreement, I continued working for Shaman, and with Shaman's, Vince Sanders', and Leigh Geither's knowledge, I continued performing my job duties, including communicating regularly with Shaman's V.P. Marc Sayler regarding the company's day-to-day operations; answering franchisees' questions and coaching them through the store opening process; meeting with new franchisees; convincing investors to open a franchise; hosting a dinner (with Defendant Sanders present) for Russian businessmen to encourage them to invest in Shaman; bringing a potential European investor to the factory to meet Defendant Sanders; attending numerous meetings with Defendant Sanders in the One Light Conference room and at the factory; and attending the Shaman Christmas party to boost employee morale.  (Ex. D.)

11.    Defendants Sanders and Shaman reaped the benefit of my continued hard work, but failed to compensate me for it.  (Ex. E.)

12.    On December 27, 2019, Vince Sanders assured me I would be paid for my recent work.

13.    Later in the day of December 27, 2019, attorney Pickett called me into an "emergency" meeting and terminated my employment, after which I received an email formally terminating my employment contract and *banning me from the premises.*  (Ex. F.)

14.    Shaman and Sanders replaced me with Ricardo Lopez, gave Lopez the title "Chief Operating Officer", and named Chad Heuffmeier "President of International Sales".

15.    During my employment with Shaman, I procured hundreds of

franchisees for Defendants Shaman and Sanders, and expanded Shaman's business into Russia.  (Ex. G.)

16.     At the time of my termination, I was in the process of procuring many more franchisees for Shaman and Sanders.  (Id.)

17.     Defendant Sanders terminated my contract in bad faith to avoid paying me commissions on certain franchise contracts/sales I had procured, and because Leigh Geither was constantly maligning, disparaging, and defaming me to Shaman's employees and franchisees – and anyone else who would listen – saying things like "he sells cocaine", "he's lazy", "he earns too much money", "he goes out drinking all night", and other such false and despicable comments.

18.     Moreover, Paragraph 9 of my Employment Agreement with Shaman, which was prepared exclusively by Defendants and their agents, states:  "This agreement may be terminated by American Shaman Franchise Systems, LLC upon 30 days written notice, and by Raymond H. Miley, Jr. upon 30 days written notice. If American Shaman Franchise Systems, LLC shall so terminate this Agreement, Raymond H. Miley, Jr. shall be entitled to compensation for 3 months beyond the termination date of such termination, unless Raymond H. Miley is in violation of this Agreement…"  (Ex. A ¶ 9.)

19.     Defendants breached Paragraph 9 of the Employment Agreement by, *inter alia*, failing to provide me 30 days' written notice of my termination, and by failing to compensate me for 3 months after my termination.

20.     Defendants' breach of contract reflects and demonstrates an outrageous and conscious disregard for my rights, which had a great probability of causing, and did cause, me to sustain substantial damages.

21.     As a direct and proximate result of Defendant's breach of contract, I have incurred substantial economic, emotional, and other damages in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00).

22.     On October 9, 2020, I retained Caryn Groedel & Associates Co., LPA for legal advice and representation in connection with my employment issues at Shaman, and on November 3, 2020, and Caryn Groedel sent Messrs. Sanders, Pickett, and Mancillas (Shaman's HR Manager) a letter requesting they pay me that which Shaman owes me for the work he performed for which they failed to compensate him between mid-October 2019 and December 31, 2019, and further requesting they pay me the 4 months of salary they owe me pursuant to my contract.  (Ex. H.)

23.     To date, Defendants have failed to pay me the four (4) months' salary they owe me, or commissions on franchise sales I procured, or wages they owe me for the services I provided them between October and December of 2019.

24.     Also, as referenced above, during my employment with Defendants, Defendant Geither published false and defamatory statements about me, without justification or privilege, to, *inter alia*, Owner/CEO Stephen Vance Sanders, employee Thomas Miles, franchisee Branden Carnes, and other potential employers, including but not limited to statements that I consumed illegal drugs, was lazy; arrived to work hungover from partying the night before; was terrible at my job; and should be fired.  When making these statements, Ms. Geither knew the statements were false.

25.     The false and malicious comments Defendants made about me, and published to people within my business community, are defamatory per se because they concern my profession and business dealings.

26.     I was passed over for numerous jobs after my termination, including by individuals who told me they had heard from Leigh Geithers that I was dishonest, a drug dealer, lazy, etc.  See, for example, Brandon Carnes' affidavit attached hereto as Ex. I.

27.     I suffered a delay in finding a new job, and had to accept a significantly lower paying job, among other economic damages, as a result of Ms. Geither's defamatory comments about my job performance.  (Ex. J, redacted job offer.)

28.     All documents attached hereto are true and accurate copies of the original document.

29.     The false and malicious rumors by Leigh Gaithers hurt my reputation as a businessman and leader, caused me to have a hard time finding another job after my termination, and caused me to have to accept a much lower-paying job than I deserves and for which I am extremely qualified.

FURTHER AFFIANT SAYETH NOT.

_____

Raymond Miley

SWORN TO BEFORE ME and subscribed in my presence in Kansas City, Missouri, this 2nd day of August, 2022.

_____

_____

KATHI MILEY
Notary Public - Notary Seal
Platte County - State of Missouri
Commission Number 19309861
My Commission Expires Feb 27, 2023

NOTARY PUBLIC

My commission expires: 2/27/23

# *EMPLOYMENT AGREEMENT*

This Employment Agreement (this "Agreement") is made effective as of April 01, 2018, by and between American Shaman Franchise Systems, Inc. of 818 Grand Blvd Suite 1100, Kansas City, Missouri, 64106 and Raymond H. Miley, Jr of 50 East 13th Street #713, Kansas City, Missouri, 64106.

A. American Shaman Franchise Systems, Inc. is engaged in the business of CBD Franchise Sales and Development. Raymond H. Miley, Jr will primarily perform the job duties at the following location: 818 Grand Blvd Suite 1100, Kansas City, Missouri.

B. American Shaman Franchise Systems, Inc. desires to have the services of Raymond H. Miley, Jr.

C. Raymond H. Miley, Jr is an at will employee of American Shaman Franchise Systems, Inc.. Either party is able to terminate the employment agreement at any time.

Therefore, the parties agree as follows:

**1. EMPLOYMENT.** American Shaman Franchise Systems, Inc. shall employ Raymond H. Miley, Jr as a(n) President. Raymond H. Miley, Jr accepts and agrees to such employment, and agrees to be subject to the general supervision, advice and direction of American Shaman Franchise Systems, Inc. and American Shaman Franchise Systems, Inc.'s supervisory personnel. Raymond H. Miley, Jr shall provide to American Shaman Franchise Systems, Inc. the following services:

Provide strategic leadership for the Company by working with management to establish long-range goals, strategies, plans and policies.

**2. BEST EFFORTS OF EMPLOYEE.** Raymond H. Miley, Jr agrees to perform faithfully, industriously, and to the best of Raymond H. Miley, Jr's ability, experience, and talents, all of the duties that may be required by the express and implicit terms of this Agreement, to the reasonable satisfaction of American Shaman Franchise Systems, Inc.. Such duties shall be provided at such place(s) as the needs, business, or opportunities of American Shaman Franchise Systems, Inc. may require from time to time.

**3. COMMISSION PAYMENTS.** American Shaman Franchise Systems, Inc. will make commission payments to Raymond H. Miley, Jr based on 6% of of gross sales made to Registered Franchise Owners from American Shaman not to exceed $350,000 in a calendar year.. This commission will be paid monthly on the tenth day of the following month.

**4. EXPENSE REIMBURSEMENT.** American Shaman Franchise Systems, Inc. will reimburse

Raymond H. Miley, Jr for "out-of-pocket" expenses incurred by Raymond H. Miley, Jr in accordance with American Shaman Franchise Systems, Inc.'s policies in effect from time to time.

**5. RECOMMENDATIONS FOR IMPROVING OPERATIONS.** Raymond H. Miley, Jr shall provide American Shaman Franchise Systems, Inc. with all information, suggestions, and recommendations regarding American Shaman Franchise Systems, Inc.'s business, of which Raymond H. Miley, Jr has knowledge, that will be of benefit to American Shaman Franchise Systems, Inc..

**6. CONFIDENTIALITY.** Raymond H. Miley, Jr recognizes that American Shaman Franchise Systems, Inc. has and will have information regarding the following:
- inventions
- processes
- technical matters
- trade secrets
- copyrights
- costs
- future plans

and other vital information items (collectively, "Information") which are valuable, special and unique assets of American Shaman Franchise Systems, Inc.. Raymond H. Miley, Jr agrees that Raymond H. Miley, Jr will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any Information to any third party without the prior written consent of American Shaman Franchise Systems, Inc.. Raymond H. Miley, Jr will protect the Information and treat it as strictly confidential. A violation by Raymond H. Miley, Jr of this paragraph shall be a material violation of this Agreement and will justify legal and/or equitable relief.

**7. UNAUTHORIZED DISCLOSURE OF INFORMATION.** If it appears that Raymond H. Miley, Jr has disclosed (or has threatened to disclose) Information in violation of this Agreement, American Shaman Franchise Systems, Inc. shall be entitled to an injunction to restrain Raymond H. Miley, Jr from disclosing, in whole or in part, such Information, or from providing any services to any party to whom such Information has been disclosed or may be disclosed. American Shaman Franchise Systems, Inc. shall not be prohibited by this provision from pursuing other remedies, including a claim for losses and damages.

**8. CONFIDENTIALITY AFTER TERMINATION OF EMPLOYMENT.** The confidentiality provisions of this Agreement shall remain in full force and effect for a period of 1 year after the voluntary or involuntary termination of Raymond H. Miley, Jr's employment. During such period, neither party shall make or permit the making of any public announcement or statement of any kind that Raymond H. Miley, Jr was formerly employed by or connected with American Shaman Franchise Systems, Inc..

**9. TERM/TERMINATION.** Raymond H. Miley, Jr's employment under this Agreement shall be for an unspecified term on an "at will" basis. This Agreement may be terminated by American Shaman Franchise Systems, Inc. upon 30 days written notice, and by Raymond H. Miley, Jr upon 30 days written notice. If American Shaman Franchise Systems, Inc. shall so terminate this

Agreement, Raymond H. Miley, Jr shall be entitled to compensation for 3 months beyond the termination date of such termination, unless Raymond H. Miley, Jr is in violation of this Agreement. If Raymond H. Miley, Jr is in violation of this Agreement, American Shaman Franchise Systems, Inc. may terminate employment without notice and with compensation to Raymond H. Miley, Jr only to the date of such termination. The compensation paid under this Agreement shall be Raymond H. Miley, Jr's exclusive remedy.

**10. COMPLIANCE WITH EMPLOYER'S RULES.** Raymond H. Miley, Jr agrees to comply with all of the rules and regulations of American Shaman Franchise Systems, Inc..

**11. RETURN OF PROPERTY.** Upon termination of this Agreement, Raymond H. Miley, Jr shall deliver to American Shaman Franchise Systems, Inc. all property which is American Shaman Franchise Systems, Inc.'s property or related to American Shaman Franchise Systems, Inc.'s business (including keys, records, notes, data, memoranda, models, and equipment) that is in Raymond H. Miley, Jr's possession or under Raymond H. Miley, Jr's control. Such obligation shall be governed by any separate confidentiality or proprietary rights agreement signed by Raymond H. Miley, Jr.

**12. NOTICES.** All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or on the third day after being deposited in the United States mail, postage paid, addressed as follows:

Employer:

American Shaman Franchise Systems, Inc.
Stephen V. Sanders
CEO
818 Grand Blvd Suite 1100
Kansas City, Missouri 64106

Employee:

Raymond H. Miley, Jr
50 East 13th Street #713
Kansas City, Missouri 64106

Such addresses may be changed from time to time by either party by providing written notice in the manner set forth above.

**13. ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

**14. AMENDMENT.** This Agreement may be modified or amended, if the amendment is made in

writing and is signed by both parties.

**15. SEVERABILITY.** If any provisions of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**16. WAIVER OF CONTRACTUAL RIGHT.** The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

**17. APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of Missouri.

**18. SIGNATORIES.** This Agreement shall be signed by Stephen V. Sanders, CEO on behalf of American Shaman Franchise Systems, Inc. and by Raymond H. Miley, Jr in an individual capacity. This Agreement is effective as of the date first above written.

_Stephen V. Sanders_ CEO
Stephen V. Sanders, CEO
American Shaman Franchise Systems, Inc.

Date: 8-17-18

Raymond H. Miley, Jr

Date: 8/17/18


Kevin

I hanks

I understand   Good luck

Good luck to you as well. Your boss is interviewing people for your position. Oct 29th. Cutthroat ass company.

Never stops

October 29th?  U mean November

Yep sorry

No October

This is November

Time flies

Nov 20, 2019, 8:19 PM

You got fired? Wtf? Terrible

 

       

## OUTSIDE SALES AGREEMENT

This Agreement ("Agreement") is entered into as of _____, 2019 by Shaman Botanicals, LLC ("Shaman"), whose principal place of business is located at 2405 Southwest Boulevard, Kansas City, Missouri 64108, and Raymond Miley, Jr., 50 E. 13th Street, Unit 2606, Kansas City, Missouri 64106 (hereinafter "Miley").

### Recitals

A. Miley desires to sell certain cannabidiol (CBD) products manufactured by Shaman, and Shaman desires to have Miley sell such products.

B. Miley represents that Miley is engaged in an independent calling and has complied with all local, state, and federal laws regarding business permits and licenses that may be required to carry out the independent calling and to perform the services to be performed under this Agreement.

C. Miley represents that Miley either is engaged in the same or similar activities for others, or has the opportunity to engage in the same or similar activities for others, and that Shaman is not Miley's sole client or customer.

In consideration of these recitals and the promises set forth in this Agreement, Shaman and Miley agree to the following:

### 1. Independent Contractor

*It is understood that Miley is an independent contractor and shall not be considered the agent of Shaman for any purpose whatsoever, and Miley is not granted any right or authority to assume or create any obligation or liability or make any representation, warranty or agreement (express or implied) on behalf of Shaman or to bind Shaman in any manner whatsoever.*

### 2. Services

A. Miley's services shall include:

   i. To develop customers located outside the United States;
   ii. To sell such international customers CBD products;
   iii. To develop a multilevel marketing campaign for the sale of Shaman's products through alternative brands including, but not limited to, Healthy Hemp Farms, LLC; and
   iv. To sell domestic customers CBD products.

Miley retains the sole right to control or direct the manner in which the services described herein are to be performed.

B. Miley will supply all equipment, tools, materials, and supplies necessary to perform the services under this Agreement, except that Shaman will supply Miley with purchase order forms or other Shaman forms necessary for the submission of orders.

C. Shaman will not reimburse Miley for any expenses incurred by Miley as a result of services rendered under this Agreement, including, but not limited to, car-related expenses, telephone expenses, and expenses related to the entertainment of Miley's clients. Miley is solely responsible for these expenses.

D. Miley may or may not, as Miley so chooses, retain employees or assistants to assist Miley. Shaman is not responsible for the compensation or instruction of Miley's employees or assistants, and these employees or assistants remain the sole responsibility of Miley.

**3. Compensation**

A.    For each month this Agreement is in effect, Shaman shall pay Miley the greater of a commission equal to ten percent (10%) of completed sales (hereinafter the "Commission") or TWENTY THOUSAND DOLLARS AND NO CENTS ($20,000.00) (hereinafter the "Draw").    A sale is "completed" and due and payable by Shaman to Miley if and only if, as and when (i) a Purchase Agreement for such CBD products satisfactory in all respects to Shaman, in its sole judgment, is fully executed by all pertinent parties, it being agreed that Shaman shall have the absolute right to accept or reject any potential order without explanation and without liability to Shaman; and (ii) such Purchase Agreement is consummated and the agreed upon purchase price is paid to and accepted by Shaman.

B. Exclusions from Commission.    Miley agrees that he shall not be entitled to any Commission if:

i.    a sale of Products is not procured solely by Miley;

ii.    a sale of Products is made to a customer who has previously contacted Shaman, as determined by Shaman in Shaman's sole opinion, or

iii.    a sale of Products is made to an agent, employee or family member of Miley.

C. Any payments due Miley shall be paid to Miley on or before the 5th of each month.

## 4. Taxes and Insurance

Miley agrees that it is Miley's exclusive responsibility to provide all employment taxes, insurance premiums, and local, state, and federal taxes related to this Agreement. Neither FICA (Social Security), FUTA (Federal Employment), nor local, state or federal income taxes will be withheld from payments to Miley from Shaman.

## 5. No Instruction

Shaman shall not provide any instruction to Miley regarding the performance of the services described herein.

## 6. No Training

Shaman shall not provide any training to Miley regarding the performance of the services described herein.

## 7. Schedule

Miley is solely responsible for his own schedule.   Shaman does not require Miley to working any particular hours or days.

## 8. No On-Site Services

Miley will not be provided an office or any office equipment nor shall Shaman require Miley to work on Shaman's premises.

## 9.   Work for Multiple Companies

Miley is encouraged to work for multiple companies at all times during the term of this Agreement.

## 10. Governing Law

This Agreement shall be governed and interpreted in accordance with the laws of the State of Missouri.

## 11. Severability

Should any portion of this Agreement be found to be invalid or unlawful, the remainder of the Agreement shall continue to be enforceable.

## 12. Integration

The parties' entire understanding is set forth in this Agreement. Any prior or contemporaneous promises or understandings are superseded by the terms of this Agreement. This Agreement may only be amended or altered by another written Agreement executed by both parties.

## 13. Termination

This Agreement may be terminated by either party without cause upon thirty (30) days' prior written notice or for cause immediately. In the event of termination of this Agreement, Miley will receive no further compensation from Shaman under this Agreement and Miley waives all rights to such compensation.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

.

Shaman Botanicals, LLC ("Shaman")                    Dated

By:     Stephen Vincent Sanders, II

Its:     Member

Raymond Miley, Jr. ("Miley")                              Dated



**Joel**

Oct 3, 2019, 4:00 PM

What time is event tonight. sitting with Vince

Doors are at 8 p.m.

I would send Vince a text verifying the time he needs to b there for the press meeting

Dec 13, 2019, 1:24 PM

Hi Joel. When will u be able to email me the top sellers I requested yesterday

This is Bud Mikey

Dec 13, 2019, 2:37 PM

Sent!

Thx



**Francis**

R u in town? I have russians wanting to talk to u

Dec 12, 2019, 11:18 AM

Heyyyyyyyyy

Dec 12, 2019, 6:20 PM

Hey sorry can't make dinner!

No prob. Enjoy ur family

Dec 19, 2019, 10:49 AM

Hey Francis do u have a grand opening sign I could borrow. Need shipped today

Sorry Bud I do not!

No prob

Delivered

  
       



**Nick**

This is Nick Porto. Give me a call.

This is Nick Porto. Give me a call.

iMessage

I am out of town til Sunday

Feel free to email what you have

Dec 2, 2019, 7:31 PM

Hello nick, just a friendly reminder to email me the bullets of the offer Thank you

  iMessage 

       



**Nick**

> Hello nick, just a friendly reminder to email me the bullets of the offer
> Thank you
> Bud Miley

Ok. Thanks.

Dec 6, 2019, 10:13 AM

> Nick, Russia has confirmed that it is compliant to ship there and sell. European is waiting for ingredients from AS for his attorney. He spoke to the current CBD store in Munich and does not expect an issue as they are importing from outside the Euro.

> Is there a response regarding my comp plan?

  

       



Leigh

something next year.

> I told them we need a couple days to make a decision

Dec 11, 2019, 3:19 PM

> Hi Leigh, when will my November commission be wired?  Vince is aware

Dec 18, 2019, 4:50 PM

> Hi Leigh   Sorry to bother u but do u remember the name Of the LLC u set up for me

Dec 18, 2019, 6:28 PM

> Never mi'd

> Mind

Delivered

   

       



**Nick**

Is there a response regarding my comp plan?

Dec 12, 2019, 11:37 AM

Nick Porto.  Give me a call.

Dec 20, 2019, 9:46 AM

I emailed you offer and severance.  Please review and sign or comment.

Send to budmilwy@hotmail.com  I have new and have to have Allan set up cbd email

Can you confirm that email address?

Budmiley@hotmail.com

Delivered



Nick

my comp plan?

Dec 12, 2019, 11:37 AM

Nick Porto.  Give me a call.

Dec 20, 2019, 9:46 AM

I emailed you offer and severance.  Please review and sign or comment.

Send to budmilwy@hotmail.com  I have new and have to have Allan set up cbd email

Can you confirm that email address?

Budmiley@hotmail.com

Delivered

Sent.

   

       

must inform you that any offers previously made to you by Shaman are withdrawn, effective immediately. As I explained to you on December 27, 2019, you have no status with Shaman Botanicals and/or its affiliated entities. No further payments of any kind are forthcoming. You have no authority to make representations on behalf of Shaman or enter any Shaman properties.

If you have any proposal you would like Shamam to consider, please forward the same to me.

Regards,

Nick

On Fri, Dec 27, 2019 at 10:44 AM Nick Porto <nporto@portolaw.com> wrote:

> Bud: I have not heard from you regarding the attached agreements. Just a reminder that you presently have no employment relationship with Shaman

Date: Fri, Dec 20, 2019 at 9:45 AM
Subject: Proposed Agreements
To: Bud Miley <bud@cbdamericanshaman.com>, Sean Pickett
<swp@kclawoffice.com>, Leigh Geither
<lgeither@cbdamericanshaman.com>, Vince Sanders
<vince@cbdamericanshaman.com>


Bud: please see the attached per our conversations.

Thank you.

Nick


Nicholas Porto
THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)
(913)-302-7945 (mobile)
(816)-463-9567 (fax)
www.portolaw.com


CONFIDENTIAL NOTICE: This email and any attachments are for the exclusive and
confidential use of the intended recipient. If you are not the intended recipient, please
do not read, distribute or take action in reliance upon this message. If you have
received this in error, please notify us immediately by return email and promptly delete
this message and its attachments from your computer system. We do not waive
attorney-client or work product privilege by the transmission of this message.

The Missouri Bar Chief Disciplinary Counsel requires all Missouri lawyers to notify all
recipients of emails that (1) email communication is not a secure method of
communication; (2) any e-mail that is sent to you or by you may be copied and held by
various computers it passes through as it goes from me to you or vice versa; and (3)
persons not participating in our communication may intercept our communications by
improperly accessing your computer or my computer or even some computer
unconnected to either of us which the email passed through. I am communicating to
you via email because you have consented to receive communications via this medium.
If you change your mind and want future communications to be sent in a different
fashion, please let me know at once.


Nicholas Porto
THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)

I have had several meetings with Vince Sanders since your proposal and again met with him last night witnessed by Ricky Lopez. I discussed my suggestions with Vince and some were agreed upon.

I will not send anything to you or speak to you unless I retain an attorney as you are very condescending and have already told me that you are going to advise Vince to reject any offer other than what you prepared. I have never communicated with an attorney that appears to have an agenda and won't start now.

Vince Sanders can update you on what we have discussed.

All the best,
Bud Miley

Get Outlook for iOS

**From:** Nick Porto <nporto@portolaw.com>
**Sent:** Friday, January 10, 2020 10:36:03 AM
**To:** budmiley@hotmail.com <budmiley@hotmail.com>; Sean Pickett <swp@kclawoffice.com>; Vince Sanders <vince@cbdamericanshaman.com>; Leigh Geither <lgeither@cbdamericanshaman.com>
**Subject:** Re: Proposed Agreements

Dear Bud: as you have yet to comment on the agreements previously provided to you, I must inform you that any offers previously made to you by Shaman are withdrawn, effective immediately. As I explained to you on December 27, 2019, you have no status with Shaman Botanicals and/or its affiliated entities. No further payments of any kind are forthcoming. You have no authority to make representations on behalf of Shaman or enter any Shaman properties.

If you have any proposal you would like Shamam to consider, please forward the same to me.

Regards,

Nick

On Fri, Dec 27, 2019 at 10:44 AM Nick Porto <nporto@portolaw.com> wrote:

> Bud: I have not heard from you regarding the attached agreements. Just a reminder that you presently have no employment relationship with Shaman and no further payments from Shaman to you are forthcoming. Please let me know with questions.
>
> Nick

On Fri, Dec 20, 2019 at 9:54 AM Nick Porto <nporto@portolaw.com> wrote:

> Bud: per your request, I am sending this to your hotmail email address. Thanks,
>
> Nick
>
> ---------- Forwarded message ----------
> **From:** **Nick Porto** <nporto@portolaw.com>

Sean-

Wow. I told Vince I was feeling like Jerry the lawyer and now I guess that has been confirmed. Just three questions:

1) Vince told me I was being paid today. Is that still happening?
2) Vince said he was paying the Healthy Hemp Farm staff today. Is that still happening?
3) Should I still try and get International business for Shaman.
4) Am I officially terminated with or without cause as President of Franchise Systems.? If I am terminated for cause what was the cause?

Thank you in advance for your response.

All the best,
Bud Miley

---

From: Sean Pickett Attorney <swp@kclawoffice.com>
Sent: Friday, January 10, 2020 11:22 AM
To: Nick Porto
Cc: Bud miley; Vince Sanders; Leigh Geither; jamie@cbdamericanshaman.com
Subject: Re: Proposed Agreements

Bud- All business, if any, with Shaman group(s) will be in writing in the case of all business arrangements going forward. Whether that is with you or anyone else. Vince, has not agreed to anything with you in your unscheduled meeting with him in the parking lot. If you do not want to move forward through Vince's lawyer(s) then you should hire a lawyer and make a proposal through your attorney. As of now, you are not to trespass on shaman property or to contact Vince sanders on any business topic as he and his companies are represented by outside counsel Nick Porto for all things dealing with Bud Miley. Should you trespass upon shaman offices and or property or personal property of Vince Sanders you may be subject to trespass. Respectfully, Sean Pickett. General Counsel for shaman botanicals, CBD American Shaman, and American Shaman Franchise systems, LLCs, as well as personal Attorney for these purposes for Vince Sanders.

Sent from my iPhone

On Jan 10, 2020, at 11:02 AM, Nick Porto <nporto@portolaw.com> wrote:

Bud, the email I sent you today to which you responded was approved, verbatim and in its entirety, by Vince Sanders. Contrary to your assertions, Mr. Sanders has not agreed to anything you have proposed. Again, you have no present status with Shaman or its related entities. I have no agenda and am instead following the direction to me given to me by Mr. Sanders.

If you have questions, please let me know.

Nick

On Fri, Jan 10, 2020 at 10:50 AM Bud miley <budmiley@hotmail.com> wrote:
Nick

## Fwd: Proposed Agreements

Bud miley <budmiley@hotmail.com>

Wed 11/11/2020 4:34 PM

To: Bud miley <budmiley@hotmail.com>

Get Outlook for iOS

---

From: Sean Pickett Attorney <swp@kclawoffice.com>
Sent: Wednesday, January 15, 2020 5:12 AM
To: Bud miley
Cc: Vince Sanders; nporto@portolaw.com; lgelther@cbdamericanshaman.com;
ricky@cbdamericanshaman.com
Subject: Re: Proposed Agreements

Bud. It can not be more clear than stated in Nick's last e- mail. You have no affiliation with the companies at this time. You have chosen to not sign the separation agreement, nor the second agreement, that were offered you. The time to have done so has now run and Vince withdrew the offers. Your handling of the situation has run its course with Vince and there are no payments, commissions or benefits owed you by the companies under any agreements. Should you wish to propose an agreement for Vince's review have an attorney draft it and send to me and nick for our communication to Vince with it. You are reminded that Vince and the companies are represented by counsel and all communications should be directed to me or Nick Porto. Respectfully, Sean Pickett.

Sent from my iPhone

On Jan 14, 2020, at 11:49 AM, Bud miley <budmiley@hotmail.com> wrote:

> Sean
> You asked me to only communicate in writing. Will you be answering my 4 questions
> from previous email?
> Also, will I still be getting my 10% commission ion International orders as promised by
> Vince on several
> Occasions?
>
> Thank you for your anticipated response
>
> Bud Miley
>
> Get Outlook for iOS
> ---
> From: Bud miley <budmiley@hotmail.com>
> Sent: Friday, January 10, 2020 12:53:10 PM
> To: Sean Pickett Attorney <swp@kclawoffice.com>
> Cc: Vince Sanders <vince@cbdamericanshaman.com>
> Subject: Re: Proposed Agreements

Get Outlook for iOS

**From:** Sean Pickett Attorney <swp@kclawoffice.com>
**Sent:** Wednesday, January 15, 2020 6:12 AM
**To:** Bud miley
**Cc:** Vince Sanders; nporto@portolaw.com; lgeither@cbdamericanshaman.com; ricky@cbdamericanshaman.com
**Subject:** Re: Proposed Agreements

Bud - It can not be more clear than stated in Nick's last e-mail. You have no affiliation with the companies at this time. You have chosen to not sign the separation agreement, nor the second agreement, that were offered you. The time to have done so has now run and Vince withdrew the offers. Your handling of the situation has run its course with Vince and there are no payments, commissions or benefits owed you by the companies under any agreements. Should you wish to propose an agreement for Vince's review have an attorney draft it and send to me and nick for our communication to Vince with it. You are reminded that Vince and the companies are represented by counsel and all communications should be directed to me or Nick Porto. Respectfully, Sean Pickett.

Sent from my iPhone

On Jan 14, 2020, at 11:49 AM, Bud miley <budmiley@hotmail.com> wrote:

> Sean
> You asked me to only communicate in writing. Will you be answering my 4 questions from previous email?.
> Also, will I still be getting my 10% commission ion International orders as promised by Vince on several Occasions?
>
> Thank you for your anticipated response
>
> Bud Miley
>
> Get Outlook for iOS
>
> > **From:** Bud miley <budmiley@hotmail.com>
> > **Sent:** Friday, January 10, 2020 12:53:10 PM
> > **To:** Sean Pickett Attorney <swp@kclawoffice.com>
> > **Cc:** Vince Sanders <vince@cbdamericanshaman.com>
> > **Subject:** Re: Proposed Agreements
> >
> > Sean-
> > Wow. I told Vince I was feeling like Jerry the lawyer and now I guess that has been confirmed. Just three questions:
> > 1) Vince told me I was being paid today. Is that still happening?
> > 2) Vince said he was paying the Healthy Hemp Farm staff today. Is that still happening?
> > 3) Should I still try and get International business for Shaman.
> > 4) Am I officially terminated with or without cause as
> > President of Franchise Systems.? If I am terminated for cause what was the cause?
> >
> > Thank you in advance for your response.
> >
> > All the best,
> > Bud Miley

**From:** Sean Pickett Attorney <swp@kclawoffice.com>
**Sent:** Friday, January 10, 2020 11:22 AM
**To:** Nick Porto
**Cc:** Bud miley; Vince Sanders; Leigh Geither; jamie@cbdamericanshaman.com
**Subject:** Re: Proposed Agreements

Bud- All business, if any, with Shaman group(s) will be in writing in the case of all business arrangements going forward. Whether that is with you or anyone else. Vince, has not agreed to anything with you in your unscheduled meeting with him in the parking lot. If you do not want to move forward through Vince's lawyer(s) then you should hire a lawyer and make a proposal through your attorney. As of now, you are not to trespass on shaman property or to contact Vince sanders on any business topic as he and his companies are represented by outside counsel Nick Porto for all things dealing with Bud Miley. Should you trespass upon shaman offices and or property or personal property of Vince Sanders you may be subject to trespass. Respectfully, Sean Pickett. General Counsel for shaman botanicals, CBD American Shaman, and American Shaman Franchise systems, LLCs, as well as personal Attorney for these purposes for Vince Sanders.

Sent from my iPhone

On Jan 10, 2020, at 11:02 AM, Nick Porto <nporto@portolaw.com> wrote:

> Bud: the email I sent you today to which you responded was approved, verbatim and in its entirety, by Vince Sanders. Contrary to your assertions, Mr. Sanders has not agreed to anything you have proposed. Again, you have no present status with Shaman or its related entities. I have no agenda and am instead following the direction to me given to me by Mr. Sanders.
>
> If you have questions, please let me know.
>
> Nick
>
> On Fri, Jan 10, 2020 at 10:50 AM Bud miley <budmiley@hotmail.com> wrote:
>> Nick,
>> I have had several meetings with Vince Sanders since your proposal and again met with him last night witnessed by Ricky Lopez. I discussed my suggestions with Vince and some were agreed upon.
>> I will not send anything to you or speak to you unless I retain an attorney as you are very condescending and have already told me that you are going to advise Vince to reject any offer other than what you prepared. I have never communicated with an attorney that appears to have an agenda and won't start now.
>> Vince Sanders can update you on what we have discussed.
>>
>> All the best,
>> Bud Miley
>>
>> Get Outlook for iOS
>> _____
>> **From:** Nick Porto <nporto@portolaw.com>
>> **Sent:** Friday, January 10, 2020 10:36:03 AM
>> **To:** budmiley@hotmail.com <budmiley@hotmail.com>; Sean Pickett

3

<swp@kclawoffice.com>; Vince Sanders <vince@cbdamericanshaman.com>; Leigh Geither <lgeither@cbdamericanshaman.com>
Subject: Re: Proposed Agreements

Dear Bud: as you have yet to comment on the agreements previously provided to you, I must inform you that any offers previously made to you by Shaman are withdrawn, effective immediately. As I explained to you on December 27, 2019, you have no status with Shaman Botanicals and/or its affiliated entities. No further payments of any kind are forthcoming. You have no authority to make representations on behalf of Shaman or enter any Shaman properties.

If you have any proposal you would like Shamam to consider, please forward the same to me.

Regards,

Nick

On Fri, Dec 27, 2019 at 10:44 AM Nick Porto <nporto@portolaw.com> wrote:
Bud: I have not heard from you regarding the attached agreements. Just a reminder that you presently have no employment relationship with Shaman and no further payments from Shaman to you are forthcoming. Please let me know with questions.

Nick

On Fri, Dec 20, 2019 at 9:54 AM Nick Porto <nporto@portolaw.com> wrote:
Bud: per your request, I am sending this to your hotmail email address. Thanks,

Nick

---------- Forwarded message ---------
From: Nick Porto <nporto@portolaw.com>
Date: Fri, Dec 20, 2019 at 9:45 AM
Subject: Proposed Agreements
To: Bud Miley <bud@cbdamericanshaman.com>, Sean Pickett <swp@kclawoffice.com>, Leigh Geither <lgeither@cbdamericanshaman.com>, Vince Sanders <vince@cbdamericanshaman.com>

Bud: please see the attached per our conversations.

Thank you.

Nick

--
Nicholas Porto

4

THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)
(913)-302-7945 (mobile)
(816)-463-9567 (fax)
www.portolaw.com

CONFIDENTIAL NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

The Missouri Bar Chief Disciplinary Counsel requires all Missouri lawyers to notify all recipients of email that (1) email communication is not a secure method of communication; (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa; and (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or my computer or even some computer unconnected to either of us which the email passed through. I am communicating to you via email because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let me know at once.

--
Nicholas Porto
THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)
(913)-302-7945 (mobile)
(816)-463-9567 (fax)
www.portolaw.com

CONFIDENTIAL NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

The Missouri Bar Chief Disciplinary Counsel requires all Missouri lawyers to notify all recipients of email that (1) email communication is not a secure method of communication; (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa; and (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or my computer or even some computer unconnected to either of us which the email passed through. I am communicating to you via email because you have consented to receive



Shawn

iMessage
Aug 28, 2019, 3:35 PM

Bud, I asked Kathi to check with you: Ohio or MO LLC? I said you should ask your accountant.

Aug 29, 2019, 10:19 AM



Recurved today



Katharine Chaglinsky · 3rd
Bloomberg News reporter at Bloomberg LP
Bloomberg LP · The College of William and Mary
New York New York · 500+ connections



About
I cover Berkshire Hathaway, life insurers and asset management for Bloomberg News

Work at Bloomberg LP

Activity
I'm a reporter at Bloomberg News working on a story about Kathy

I was wondering if you'd be willing to chat sometime, even if it's just on background. Last year Kathy instituted this policy that distributors couldn't have side gigs with GD companies essentially. I've found it kind of interesting as I haven't heard of many companies doing this

I wonder there's a couple cases that touch on this point including one with you that was filed last year. Would love to hear more about your side

   

       



Shawn

Interesting; please ignore

If she calls you – please say you can't discuss Kirby matters as it's part of ongoing litigation and hang up.



And then let me know



Sep 30, 2019, 5:47 PM



You'll have my comments tomorrow

Oct 2, 2019, 11:03 AM

   

       



Joel

Text Message
Sep 12, 2019, 2:56 PM

Hat time does Vip party start and end

Who is this?

Sorry you're not in my phone so just trying to make sure I have my contacts straight

Bud Miley

8pm to 11pm. Hi Bud!

You + 1?

You're on there, see ya there!

Thank you Joel, see you there

Sep 13, 2019, 4:32 PM

Hi Joel, please send me

  Text Message

       



Leigh

Hi Leigh　Have someone
coming town that I would like
Vince present
Do u know if he is out of town
any days next week?　Thanks

Oct 1, 2019, 11:09 AM

Sorry thought u were back
today　I just saw ur off
Disregard email from Carmen
saying I'm looking for u　Safe
travels

Oct 1, 2019, 1:11 PM

I'll be back tomorrow. I can
process your commission
wire tomorrow if that works
for you?

No prob　Was really seeing if
I had mail lol

  

       



Joel

Hi Joel please send me SpraySeeMo schedule of events. Thanks bro This is Bud Mikey

Miley

Hey Bud! Here is a copy of the event flyer

Tap to Load Preview

drive.google.com     >

Oct 2, 2019, 10:43 AM

Hi Joel, sent in response late for Sensatia Media/VIP. Can I plus 1 still go. If not not no prob just planning the week

I have you added plus one.

 

       



Joel

I have you added plus one. Sorry had it done yesterday but forgot to confirm with you and let you know that you're good to go.

Thanks Joel



Oct 3, 2019, 4:00 PM

What time is event tonight. sitting with Vince

Doors are at 8 p.m.

I would send Vince a text verifying the time he needs to b there for the press meeting

Dec 13, 2019, 1:24 PM

   Text Message

       




**Jamie**

September 24th, 2019
07:00AM

### Partially Shipped / Backorder
### (Unpacked) Report

| Name | Needed |
|---|---|
| Terpene Rich Topical Serum (15mL) | 8 |
| Terpene Rich Hemp Oil Clearomizer (Flavor Strawberry) | 4 |
| Shaman POS - IPAD VERSION w/ Square Terminal | 1 |

### Orders That We Owe Items (2)

| Order # Name | Unpacked products | Phone | Date | Days Past |
|---|---|---|---|---|
| | 4 x Terpene Rich Hemp | | | |



Sep 30, 2019, 12:55 PM

My retired NFL pro is very
interested in Ohio. How many
franchisees are there in the
state. He has been involved
with Buffalo Wild Wings.

Sep 30, 2019, 8:51 PM

  iMessage 

       



Jamie

with Buffalo Wild Wings.

Sep 30, 2019, 8:51 PM

Jamie Sorry for delay. I started texting them phone rang and forgot about it til now. 1 open and 5 more sold. Picking up fast as just became legal in July

👍 👍. Ty

Let me know if I can help with ur friend

K

Oct 8, 2019, 5:36 PM

Hi Jaimie Im bringing a guest to factory around 1 Picking him from airport at 12:15 sorry for late notice but, can u

  iMessage 

       



Jamie

**Partially Shipped / Backorder
(Unpacked) Report**

| Name | Needed |
|---|---|
| CBD Honey Sticks THC Free | 1 |

**Orders That We Owe Items (1)**

| Order # | Name | Unpacked products | Phone | Date | Days Past |
|---|---|---|---|---|---|
| #250285 | Ben Tonkin | 1 x CBD Honey Sticks THC Free | +1202 22537 31 | 2019-10-10 08.44 | 2 30 days |

Oct 12, 2019, 11:51 AM

For some reason he ordered
THC free sticks. Carmella was
calling him to confirm he
ordered them free or he
wanted with THC.



One away from perfect 😂😂😂

Oct 17, 2019, 5:43 PM

Marc just told me the factory

  iMessage 

       



Jamie

Hi Jamie   Reminder we have Winky Wright touring factory tomorrow. I pick him up at airport at 9:10 am and go directly  to airport

Directly to Factory

No  problem

Nov 4, 2019, 7:36 PM

Thx

You got it

Nov 5, 2019, 9:25 AM

Arrive in 10 min

Ok

Nov 16, 2019, 3:13 PM

iMessage

  

       



**+1 (419) 967-7667**

iMessage
Nov 6, 2019, 5:21 PM

Hey this is Sam from Metro my brother told me to talk to you about setting up CBD products in our store. Can you send me a catalog with what you have available and what marketing banners or flyers your have as well. Thank you

> Hi Sam. What City r u located

Read 11/6/19

Cleveland, OH

44111

  

       

 **Caryn Groedel**
& Associates Co., LPA

31340 Solon Road
Suite 27
Cleveland, OH 44139
T: (440) 544-1122
F: (440) 996-0064
E: cgroedel@groedel-law.com


*Labor and Employment*

November 3, 2020

CONFIDENTIAL
PROTECTED PURSUANT TO FED. R. EVID. 408

Mr. Stephan Vincent Sanders, Jr., CEO - *by email: Vince@cbdamericanshaman.com*
Mr. Luke Mancillas, H.R. Manager - *by email: Luke@cbdamericanshaman.com*
Shawn Pickett, Esq. - *by email: swp@kclawoffice.com*
c/o CBD American Shaman
2300 Main Street, Suite 165
Kansas City, MO 64108

Dear Messrs. Sanders, Mancillas, and Pickett:

I am writing to you on behalf of Raymond ("Bud") Miley, who is 56 years old and therefore in a protected category under Missouri state law, and Title VII of the Civil Rights Act of 1964. Mr. Miley has sought my legal advice and counsel in connection with CBD American Shaman's ("ASFS") termination of his employment on 12/17/19, after nearly two years of dedicated employment -- with no history of disciplinary or performance issues whatsoever.

During his employment with ASFS, which commenced when he was hired in as President in April 2018 and reported to the company's owner and CEO, Vince Sanders, Mr. Miley developed the company's infrastructure, including hiring all of ASFS' employees -- executive, sales, and administrative staff, as well as its Controller and Human Resources Manager who oversees ASFS and other Shaman companies. During Mr. Miley's 21 months of leadership at ASFS, the company grew from grossing approximately $50,000 per month, to grossing more than $2.7M per month.

In October 2019, a former independent contractor for ASFS who was a close friend of Jamie Woolard, the current "Director of Manufacturing", informed Mr. Miley that he was going to be "fired" in a few weeks, which Mr. Miley promptly relayed to Mr. Sanders, who responded by assuring Mr. Miley that that was not true. However, just a week later, ASFS attorney Sean Pickett terminated Mr. Miley's employment.

In a meeting attended by Messrs. Pickett, Sanders, Miley, and Pardo the following day, Mr. Pickett informed Mr. Miley that ASFS wanted to retain him as President of International Sales, but as an independent contractor rather than as a W-2 employee. The parties discussed,

and ultimately agreed, that Mr. Miley would be paid either $20,000 per month, or commission on all international sales, whichever was greater. Despite Mr. Miley's efforts to memorialize the agreement, Messrs. Pickett and Sanders were evasive, and the agreement was not formalized or executed. Nonetheless, in good faith reliance on the agreed upon terms, Mr. Miley continued working for ASFS -- with ASFS' knowledge, including communicating regularly with vice president Marc Sayler regarding day to day operations; answering questions and coaching current franchisees who called him on his cell phone or sent him emails; closing sales; coaching new franchisees through the store opening process; meeting with new franchisees, such as Dr. Nick of Ohio, when they came to town; convincing Robert Shultz to open a franchise; convincing Stephen Jodat/Lesley Miley to open a franchise; hosting a dinner (with Vince Sanders present) for Russian businessmen to encourage them to entering into an agreement with ASFS; meeting with a European businessman in Kansas City and bringing him to the factory to meet Vince Sanders; attending numerous meetings with Vince Sanders in the One Light Conference room and at the factory; and attending the ASFS Christmas party for morale purposes, the benefits of which ASFS reaped, but did not pay him.[1]

Mr. Miley noticed that Mr. Sanders was becoming increasingly more withdrawn and difficult to contact, and eventually, Mr. Miley was precluded from contacting Mr. Sanders directly, and was only able to contact him through Mr. Sanders's attorneys.

On or about December 17, 2019, Sean Pickett called Mr. Miley to an "emergency" meeting and told him that his employment was terminated. The only explanation given to Mr. Miley was: "You're an at will employee."

After Mr. Miley's termination, Ricardo Lopez assumed some or all of his job duties, including overseeing ASFS' day to day operations and attending management meetings, but with a different job title; he refers to himself as ASFS' Chief Operating Officer. It is important to note that Mr. Lopez is nearly 30 years younger than Mr. Miley. Moreover, Chad Heuffmeier, who is approximately 15 years younger than Mr. Miley, was appointed president of International Sales[2].

First of all, Mr. Miley was not an "at will" employee; he had an employment contract.

Secondly, implicit in every contract is the duty of good faith and fair dealing, which ASFS breached by terminating Mr. Miley in the manner it did.

---

[1] This forms the basis of Mr. Miley's unjust enrichment claim.
[2] Upon information and belief, ASFS misclassifies, pays, and reports Chad Heuffmeier as an independent contractor, when he is clearly an employee: he works regularly hours out of an office located in the Shaman factory on South West Blvd. in Kansas City.

Thirdly, ASFS breached paragraph 9 of Mr. Miley's employment contract by failing to give him 30 days' notice, and by failing to pay him for 3 months following his termination. Paragraph 9 states, in relevant part:

> ... This Agreement may be terminated by American Shaman Franchise Systems, Inc. upon 30 days written notice, and by Raymond H. Miley, Jr. upon 30 days written notice. If American Shaman Franchise Systems, Inc. shall so terminate this Agreement, Raymond H. Miley, Jr. shall be entitled to compensation for 3 months beyond the termination date of such termination, unless Raymond H. Miley, Jr. is in violation of this Agreement.

Accordingly, Mr. Miley has viable claims against ASFS and Mr. Sanders for breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and age discrimination. Nonetheless, and despite the emotional and economic these events have caused Mr. Miley to suffer, he is interested in exploring a non-litigation resolution. Toward that end, I ask that you, or outside counsel, contact me **within the next ten (10)** days to discuss this matter and determine whether we can arrive at a mutually agreeable resolution.

In the meantime, ASFS has a legal obligation to take all necessary steps to preserve potentially relevant evidence in this matter, including evidence maintained electronically ("Electronically Stored Information" or "ESI"), digitally, and/or in document form. Please preserve the data on the following electronic devices: all of ASFS' servers and back-up devices and systems; and all laptop computers, desktop computers, iPhones, iPads, and all other electronic devices used at home and/or at work by Mr. Miley; Mr. Sanders; Mr. Lopez, Mr. Heuffmeir; all individuals who reported to Mr. Sanders at any and all times between January 1, 2018, and October 31, 2020; all individuals involved in the decision to terminate Mr. Miley's employment; all individuals involved in the decision to classify Mr. Miley as an independent contractor prior to his termination; and all individuals involved in the decision to not give Mr. Miley 3 months' notice or pay him 3 months' salary after his termination.

Please also preserve the following information in its native format until a true copy is made and the meta data preserved, even though it may, in the event of litigation, later be requested in a text, TIFF, or other user friendly, searchable form:

- All performance evaluations; payroll records; W-2s; 1099s; all documents pertaining to transfers, promotions, demotions, work assignments, and wage and hour classification; all schedules, contracts, discipline-related documents, severance agreements, job descriptions, termination letters, communications to and from the California Employment Development Department regarding unemployment compensation, and calendars, for: Messrs. Miley, Sanders, Lopez; and Heuffmeier; all individuals who reported to Mr. Sanders at any and all times between January 1, 2018, and October 31, 2020; all individuals involved in the decision to terminate Mr. Miley's employment; all individuals involved in the decision to classify Mr. Miley as an

independent contractor prior to his termination; all individuals involved in the decision to classify Mr. Heuffmeier as an independent contractor; and all individuals involved in the decision to deprive Mr. Miley of 3 months' notice and failing to pay him for 3 months after his termination.

- All electronic data (including but not limited to emails, text messages, what's app messages, and instant messages) created on electronic devices utilized by the above referenced individuals, and the servers or back-up media on which such data is held and/or through which it was transferred or stored;

- All documents upon which ASFS relied when terminating Mr. Miley's employment;

- All organizational charts for ASFS from January 1, 2017 through October 31, 2020;

- All documents pertaining to any and all investigations by, and/or on behalf of, ASFS regarding allegations of discrimination, breach of contract, and/or a wage and hour violation, asserted by current and/or former ASFS employees between January 1, 2017 and October 31, 2020, including but not limited to the current/former employees' complaints or reports of discrimination and/or wage and hour violation(s); investigation protocol followed; questions asked in interviews; statements taken and/or submitted; recordings; the scheduling of investigatory meetings; results; reports; and conclusions;

- All documents pertaining to lawsuits and/or administrative charges filed against ASFS by current and/or former ASFS employees between January 1, 2017 and October 31, 2020, alleging discrimination and/or a wage and hour violation, including all complaints and Charges, and ASFS' response to all such complaints and Charges;

- All AS policies and procedures that applied to Mr. Miley during his employment with AS, **including all drafts, revisions, amendments, and updates;**

- All of ASFS' job descriptions that exist and/or have existed between January 1, 2017 and October 31, 2020, **including all drafts, revisions, and amendments updates;**

- All of ASFS' handbooks, personnel manuals, policies, procedures, memoranda, correspondence, and other documents pertaining to ASFS work rules, performance criteria, performance evaluations, paid time off, discipline, transfers, demotions, hiring, promotions, termination, discrimination, job classification(s), and overtime, including all **drafts, revisions, amendments, and updates**, that exist and/or existed at any and all times between January 1, 2017 and October 31, 2020;

- All documents relating to any and all discrimination training provided by, and/or on behalf of, ASFS to its employees in Missouri and Ohio between January 1, 2017 and October 31, 2020, including but not limited to sign-in sheets, materials provided at any

and all such trainings, the scheduling of all such trainings; and the CV or resume of all individuals who lead each such training; and

- All of ASFS' document retention policies and procedures, including all drafts, amendments, and revisions, that exist and/or existed at any and all times between January 1, 2017 and October 31, 2020.

ASFS' obligation includes discontinuing all relevant data retention, destruction, and backup tape recycling policies. Please ensure that ASFS does not destroy, erase, conceal, change, or alter any paper, electronic files, or any data generated by, or stored on, ASFS' computers or storage media (such as hard disk drives, CDs, DVDs, back-up tapes, and other electronic data).

Please also ensure that ASFS does not pack, compress, erase, purge or otherwise dispose of files, or parts of any files, unless a true and correct copy of such files is made first, and that it preserves all passwords, decryption procedures, network access codes, ID names, tutorials, written instructions, originating software in each of its versions, and decompression or reconstruction software, in addition to all other information required to access, view, and, if necessary, reconstruct the electronic data we may request in discovery. In order to protect this data, please make sure ASFS does not reuse or overwrite any media.

ASFS can most easily comply with its obligations by making a mirror-image hit stream back-up copy of computers and storage media (such as hard disk drives, CDs, DVDs, back-up tapes, and all other electronic data), which will inexpensively preserve relevant electronic and digital evidence on searchable CD-ROMs and/or DVDs. This copy can be searched at a later time for potentially relevant evidence without imposing an undue burden on ASFS.

For purposes of this notice, the term "ESI" includes, but is not limited to, all text files, word processing documents, presentation files, such as PowerPoint, spreadsheets, email files (including "cc" and "bcc" fields and attachments), and information concerning email files (including logs of e-mail, header information, and deleted files), internet history files, graphical files in any format, data bases, calendar and scheduling information, telephone logs, contact managers, computer activity logs, and all file fragments and back up files containing electronic data that exists on desktop computers, laptops, ipads, iphones, other handheld and electronic devices, including telephones (including voice mail), servers, etc. As you know, meta data must also be preserved.

Lastly, although this letter focuses on ESI, similar potentially relevant paper documents and recordings should be preserved as well.

I look forward to receiving a response to this letter within the next 10 days.

Very truly yours,

*Caryn M Groedel*

Caryn M. Groedel

CMG:jm
cc: Raymond Miley by email

STATE OF OHIO          )
                       )  SS:    AFFIDAVIT
COUNTY OF CUYAHOGA  )

I, Thomas ("TJ") Miles, being first duly sworn upon oath, depose and say:

1.      I am more than 18 years old and make the following statements based upon my personal knowledge.

2.      In the first quarter of 2018, Bud and I met in Cleveland, Ohio, to talk about a job opportunity.  Bud told me he was going to be president of a start-up company called American Shaman, and asked me if I wanted to be a salesman for the company.  I said yes, and Bud hired me as the first salesperson of American Shaman.

3.      I was a salesman for American Shaman from April 2018 to August 2020.  I was hired as an employee, and American Shaman classified me as an employee, issuing a W-2 for me for 2018 and 2019.

4.      In August 2020, Vince Sanders terminated me, but hired me right back as a 1099 employee – **though nothing about my job changed** from when I was classified and paid as a W-2 employee, to when I was re-classified and paid as a 1099 employee – except that Vince Sanders told me he wanted me to work from home instead of from the company's corporate offices in Cleveland, Ohio.

5.      I worked for American Shaman as a 1099 salesperson, doing the same things I did as a W-2 salesman, from August 2020 until I was terminated in February of 2021.

6.      My employment with American Shaman overlapped with Bud Miley's employment from April of 2018 through December of 2019 when Bud was terminated.  Bud was president of the company that whole time, and I was a sales person that whole time, and we worked together in the corporate office until Bud moved to Kansas City.  After that, we worked together – but remotely – until Bud's termination.

7.    Bud built the entire company from the ground up: he hired administrative people, a vice president, Human Resource personnel, a receptionist, and salespeople.  Bud built the company from 0 stores to 185 stores in just one year, and in the second year, he built the company to approximately 200 stores, and by the time of his termination, there were approximately 300 American Shaman stores.

8.    During my employment with American Shaman, the CFO, Leigh Gaithers, told me numerous malicious things about Bud Miley, including that Bud:

- frequently consumed illegal drugs;

- was lazy;

- came to work hung over from partying all night;

- did a terrible job as president of American Shaman;

- should be fired; and

- that, if Bud was terminated and went to work somewhere else, no one should follow him.

9.    I believe these false and malicious rumors by Ms. Gaithers hurt Bud's reputation as a businessman, caused him to have a hard time becoming re-employed after his termination from American Shaman, and caused him to have to accept a much lower-paying job than he deserves and for which he is extremely qualified.

FURTHER AFFIANT SAYETH NOT

_____
Thomas Miles

SWORN TO BEFORE ME and subscribed in my presence in Cleveland, Ohio, this _____ day of August, 2022.

_____
NOTARY PUBLIC
My commission expires: _____



July 09, 2021

Raymond H. Miley, Jr.

Re: Offer of Employment

Dear Raymond H. Miley, Jr.:

As we discussed in my office, on July 06, 2021, we are extending to you an offer of employment as Sales Manager. If you accept our offer of employment, the following terms and conditions will apply.
Your job responsibilities are as follows: Manage and train salespeople
Please plan to begin work on July 19, 2021. I will contact you prior to July 14, 2021 to confirm your starting date. You will report directly to me as your Manager.

Your beginning rate of compensation will be an annual salary of $46,800.00. In addition to this compensation, you also will be paid a commission based on $10 per unit of Air Filtration Systems. This commission will be paid in accordance with our policies which, may be modified from time to time. You also will be reimbursed for the following out-of-pocket expenses, in accordance with our policies as may be changed from time to time:
- travel expenses
- meals

Additionally, you will be entitled to one week of paid vacation for each year of employment in accordance with our usual policies.

If the above terms meet with your understanding of our discussion, please contact me at your earliest convenience regarding whether or not you will accept our offer of employment. I may be contacted by e-mail at ████████████████████ f you decide to accept our offer, we will formalize our discussion with an employment agreement. This letter itself does not constitute an employment agreement.

We are looking forward to the opportunity of working closely with you in the near future.

Sincerely,

Managing Partner

Ex. J